UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 3:17cr18 (JBA) |
| *v.* | July 31, 2020 |
| JUSTIN PARKER | |

**RULING GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

Defendant Justin Parker seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A) on the grounds that he is at increased risk of severe illness from Coronavirus Disease 2019 ("COVID-19")[1] due to his "latent tuberculosis ('LBTI'), [his] history of obesity, and [his] increasingly high blood pressure readings." (Def.'s Mem. Supp. Mot. for Compassionate Release [Doc. # 72] at 1.) After initially opposing Defendant's motion, the Government now "respectfully defers to the Court as to whether Mr. Parker's circumstances warrant his early release." (Gov't's Reply to Def.'s Mem. Supp. Mot. for Compassionate Release [Doc. # 74] at 6.) For the reasons that follow, Defendant's motion is granted.

**I.  Background**

On May 4, 2017, Defendant pleaded guilty to Count One of the Indictment, charging him with conspiracy to possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). (Plea Agreement [Doc. # 37] at 1.) Based on his criminal history and the stipulated drug quantity, Defendant faced a Sentencing Guidelines range of seventy to eighty-seven months of imprisonment. (*See* Presentence Investigation Report [Doc. # 45] ¶ 70).

---

[1] COVID-19 is also referred to as SARS-CoV-2.

On August 1, 2017, the Court imposed a sentence at the low end of this guidelines range, ordering Defendant to serve a seventy-month term of imprisonment. (*See* Judgment [Doc. # 60] at 1.) Defendant has thus far served fifty-three months in custody, equivalent to sixty-two months with good conduct time. (Def.'s Mem. at 1.) He is "due to be released on September 22, 2020, to a Halfway House." (*Id.*)

Defendant, who is thirty-four years old, is "regularly monitored by the BOP pulmonary clinic because he is diagnosed with latent tuberculosis." (*Id.* at 2.) Defendant also "has a documented history of obesity in the BOP, and is currently overweight with a BMI of 29.53," (*id.*), and "will have a BMI of 30 if he gains only 4 pounds," (*id.* at 13). Additionally, Defendant's BOP medical records "indicate[] increasing blood pressure readings," with his most recent readings falling outside of the normal range. (*Id.*)

The Court assumes the parties' familiarity with the ongoing COVID-19 pandemic and its spread from person-to-person, especially between those who are in close contact with one another. How COVID-19 Spreads, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fprepare%2Ftransmission.html (last accessed July 31, 2020). The Centers for Disease Control and Prevention ("CDC") advise that persons who are "65 years and older" and "people of all ages with underlying medical conditions, particularly if not well controlled, including: . . . chronic lung disease or moderate to severe asthma[;] . . . serious heart conditions[;] . . . conditions that can cause a person to be immunocompromised . . . [such as] cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS; . . . severe obesity (body mass index [BMI] of 40 or higher)[;] . . . diabetes[;] . . . chronic kidney disease

2

undergoing dialysis[;] . . . [and] liver disease" are "at higher risk for severe illness from COVID-19." PEOPLE WHO ARE AT HEIGHTENED RISK OF SEVERE ILLNESS, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed July 31, 2020).

Defendant is currently incarcerated at FCI Allenwood. As of July 31, 2020, FCI Allenwood had no reported active cases of coronavirus among inmates and staff, with one staff member having recovered from the disease. COVID-19, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last accessed July 1, 2020).

On or about May 28, 2020, Defendant submitted a request for a reduction in sentence, which the Warden denied on June 5, 2020. (*See* Def.'s Exs. to Mot. for Compassionate Release [Doc. 66-1] at 7-8.)[2]

On July 13, 2020, Defendant filed a *pro se* Motion for Compassionate Release. ([Doc. # 66].) The Government filed an opposition to Defendant's Motion on July 25, 2020. (Gov't's Opp. to Def.'s Mot. for Compassionate Release [Doc. # 69].) In accordance with the District of Connecticut's April 7, 2020 standing order and pursuant to the Criminal Justice Act, counsel was appointed to represent Defendant on July 21, 2020.[3] *See In Re: Court Operations Under the Exigent Circumstances Created by COVID-19*, Standing Order No. 20-14 (SRU), April 7, 2020. On July 29, 2020, Defendant submitted a memorandum in support of his Motion, elaborating on his medical

---

[2] On March 19, 2020, in response to the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136 (2020), which contemplated an expansion to the BOP's authority to place prisoners on home confinement.

[3] The Court expresses its appreciation for CJA-appointed Counsel's able representation of Defendant in this matter.

history, his record while in prison, and his release plan. On July 31, the Government revised its position on this matter, stating that "in light of the limited amount of time that Mr. Parker has left to serve, the amount of time he has already served, and the additional § 3553(a) factors highlighted by defense counsel, the Government defers to the Court as to whether early release is appropriate." (Gov't's Reply at 1.)

## II. Discussion

Defendant moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides,

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Although incarcerated persons previously could only seek compassionate release upon motion of the BOP, the First Step Act of 2018 amended that provision to permit prisoners to seek relief directly from the courts upon satisfaction of certain exhaustion requirements.[4]

Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that

---

[4] As the Government agrees, (see Gov't's Opp. at 2-3), Defendant has satisfied the exhaustion requirement, as he submitted a request for a reduction in sentence on or prior to May 28, 2020, which was denied on June 5, 2020. (See Def.'s Exs. to Mot. for Compassionate Release at 7-8.)

(1)(A) Extraordinary and compelling reasons warrant the reduction; . . .

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

Application Note 1 to that Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.

Defendant contends that the "present global pandemic is a quintessential extraordinary circumstance beyond what most Americans have experienced in their lifetime, and the grave risk to [him] from continued incarceration provides a compelling reason for his immediate release." (Def.'s Mem. at 6.) Defendant notes that "[r]ecent studies suggest that latent tuberculosis, which can live in the body for years, can be activated by COVID-19," and that other courts "have released inmates with latent tuberculosis due to the risk that COVID-19 presents when someone has that pre-existing condition." (*Id.* at 12.) Defendant asserts that latent tuberculosis, in "combination" with his weight and high blood pressure, "poses an even greater danger" of suffering severe health consequences or death in the event that he contracts COVID-19. (*Id.* at 17.) Defendant also notes that he has completed the bulk of his sentence, that he is scheduled to be released from FCI Allenwood in less than two months, and that he has an unblemished disciplinary record in prison. (*See* Def.'s Mem. at 1-2, 21.) He adds that he has a release plan to reside with Quanisha Grier, a urology technician for Yale New Haven Health and his girlfriend of eight years; that he has his

5

commercial driver's license; and that his brother Dustin Parker has agreed to "assist him in obtaining employment upon his release" in the transportation services industry. (*Id.* at 2, 20.)

The Government has rescinded its opposition to Defendant's motion and now defers to the Court as to whether Defendant is entitled to compassionate release. (Gov't's Reply at 1.) The Government nonetheless notes that "all of the defendant's conditions are being treated and attended to by the BOP"; that Defendant "has not explained any specific deficiency in the response of [FCI] Allenwood, where he is housed, to this public health situation"; and that there are presently "no reported cases of coronavirus among inmates and staff" at the facility. (*Id.* at 3.) The Government further opines that "there are factors that continue to weigh against Mr. Parker's release," as his "drug distribution had been occurring over an extended period of time" and as he had a significant criminal history prior to this offense even though "many of his crimes occurred some years ago." (*Id.* at 4-5.) However, the Government does concede that "Mr. Parker appears to have actively engaged in programming in prison and made a sincere attempt to turn his life around," and that "Mr. Parker maintained an excellent disciplinary record" free of disciplinary "tickets" during his four years in prison. (*Id.* at 5.) The Government also agrees with Defense counsel that Defendant "does appear to have an employment option coupled with the desire to pursue legitimate employment upon release." (*Id.*)

The Court concludes that Defendant has demonstrated extraordinary and compelling reasons justifying his immediate release. Defendant's latent tuberculosis, coupled with his weight and elevated blood pressure, support a grant of compassionate release at this time. *See United States v. Atwi*, 2020 WL 1910152 (E.D. Mich. Apr. 20, 2020) (granting compassionate release based in part on latent tuberculosis); *United States v. Barrenechea*, 92CR00403-MMC-3, ECF No. 2446 (N.D. Cal. May 7, 2020) (same). As another court has noted, an observational study into the

6

"relationship of tuberculosis and COVID-19 in 36 confirmed COVID-19 patients" found "that 'individuals with latent or active TB [Tuberculosis] may be more susceptible to SARS-CoV-2 infection.'" *Doe v. Barr*, No. 20-CV-02141-LB, 2020 WL 1820667, at *5 (N.D. Cal. Apr. 12, 2020) (citing Yu Chen, *et al.*, "Active or latent tuberculosis increases susceptibility to COVID-19 and disease severity" (March 16, 2020)). That same study "also found that COVID-19 disease progression may be more rapid and severe in those with latent or active tuberculosis" and identified "tuberculosis history" as an "important risk factor for SARS-CoV-2 infection." *Id.* Given this risk factor, in combination with his weight and blood pressure, Defendant has shown that his release is warranted under 18 U.S.C. § 3582(c)(1)(A)(i) and U.S.S.G. § 1B1.13.

The Court also concludes that Defendant "is not a danger to the safety of any other person or to the community." 18 U.S.C. § 3582(c)(1)(A)(ii). Defendant was convicted of a non-violent offense, and the BOP has found him fit for release to a halfway house. Additionally, Defendant "is not a danger to the community during this pandemic because he has a home to return to—where he can self-quarantine—and an adequate reentry plan" of living with his long-term girlfriend. *Rodriguez*, 2020 WL 1627331, at *11.

Finally, Defendant's compassionate release is consistent with the 28 U.S.C. § 3553(a)(1) sentencing factors. Considering his good conduct time, Defendant has served approximately ninety percent of his sentence, minimizing any sentencing disparities between him and similarly situated defendants. Defendant has also been a model inmate, serving this time without incurring any disciplinary tickets. He has also availed himself of correctional programming, "successfully completing the Non-Residential Drug Treatment Program, Anger Management, the Victim Impact Program, and a 10 month Electrical Occupations course." (Def.'s Mem. at 1.)

In sum, Defendant has shown both that extraordinary and compelling circumstances justify his release and that the factors set forth in 18 U.S.C. § 3553(a) weigh in its favor.

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Compassionate Release [Doc. # 66] is GRANTED. Defendant's sentence is reduced to time served. Defendant shall be promptly released to the home of Ms. Grier, where he shall self-quarantine for fourteen days as circumstances allow.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 31st day of July 2020.